**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA  DIVISION**


**CHARLES ROBERT BAKER,**

      **Plaintiff,**

**vs.**                            **Case No. 3:08cv295-RV/WCS**

**D. LIADACKER, et al.,**

      **Defendants.**

_____/


## SECOND REPORT AND RECOMMENDATION[1]

Defendants who have been served[2] filed a motion to dismiss Plaintiff's retaliatory

and false disciplinary report claims and conspiracy claims on exhaustion grounds.  Doc.

48.  Defendants also seek to dismiss Plaintiff's claims for compensatory and punitive

damages pursuant to 42 U.S.C. § 1997e(e).  Doc. 48.  Plaintiff was advised to respond

to Defendants' motion to dismiss, doc. 50, and his response is before me.  Doc. 55.

Plaintiff claims that he was retaliated against at Century Correctional Institution

by Defendant Liadacker because he filed grievances.  Doc. 21.  Plaintiff alleges that on

---

[1] The first report and recommendation entered denied Plaintiff's motion for a preliminary injunction.  Docs. 30, 46.

[2] Only eight of the ten named Defendants have been served.  The two Defendants who still are unserved are Liadacker and Magaha.  *See* doc. 47.

June 27, 2007, Defendant Liadacker told Plaintiff he was going to "set up" Plaintiff (that is, to cause him to be falsely accused of a prison violation) and approximately ten days later Plaintiff was issued two disciplinary reports for possession of a weapon and possession of narcotics. *Id.* Plaintiff alleges that Defendant Liadacker conspired with others in filing and prosecuting the allegedly false disciplinary charges. *Id.* On July 17, 2007, Plaintiff was found guilty of both disciplinary charges, which have not been overturned, and was punished with 120 days of disciplinary confinement. *Id.* Plaintiff did not lose gain time. *Id.*

**Defendants' evidence**

As alleged by Plaintiff, the disciplinary reports were issued on July 7, 2007, and he was found guilty of both charges on July 17, 2007. Doc. 21.

Plaintiff filed a formal grievance to the Warden on August 1, 2007, which challenged the disciplinary report for possession of a weapon. Doc. 48, p. 3, *citing* Defendants' ex. A (doc. 48-2, p.1). Plaintiff asserted there that his due process rights were violated in the investigation of the report and in the disciplinary hearing. *Id.* He argued that he had been denied due process because the disciplinary team refused to call his father as a witness, refused to make Plaintiff's written statement a part of the record, and refused to let him view a photograph of the weapon. *Id.* Plaintiff did not assert that the report was either fabricated or retaliatory. *Id.* Plaintiff's grievance was denied on August 14, 2007, and the disciplinary report was upheld. Defendants' Ex. A (doc. 48-2, p. 2).

On August 27, 2007, Plaintiff proceeded to the second step of the grievance process, filing an appeal to the Secretary of the Department of Corrections. Doc. 48, p.

3, *citing* Defendants' ex. B (doc. 48-2, p. 3). Plaintiff began his appeal by alleging that the disciplinary report was under investigation by the FBI because it "was written in retaliation for [Plaintiff's] having filed a grievance against Sgt. Liadacker." Defendants' ex. B (doc. 48-2, p. 3). Plaintiff alleged that Sergeant Magaha and Sergeant Liadacker conspired to "set him up." *Id.* Plaintiff again argued that the disciplinary team failed to consider his evidence and, thus, violated his due process rights. *Id.*

The appeal was denied on September 19, 2007. Defendants' ex. B (doc. 48-2, p. 4). The reviewer noted that a proper response had been made to his formal grievance and that Plaintiff did not provide "sufficient information to warrant a dismissal of the disciplinary report." *Id.* The response to Plaintiff's appeal further stated: "Your appeal presents allegations and/or charges that have not been previously addressed at the institution." *Id.* Plaintiff was informed that the grievance appeal was a review process and it was "not appropriate to raise new allegations, charges, and facts that the previous decision maker (Institution) has not had an opportunity to investigate and respond to." *Id.*

Plaintiff also submitted a formal grievance to the Warden appealing an unspecified disciplinary report on August 1, 2007. Defendants' ex. C (doc. 48-2, p. 5). Plaintiff again claimed that the disciplinary team refused to read his witness statement and refused to allow Plaintiff to "view the photo of the alleged narcotics." *Id.* Based on that statement, it is presumed that this formal grievance concerns the second disciplinary report for possession of narcotics. Plaintiff's grievance was denied on August 14, 2009, finding that his statement was considered by the disciplinary team. Defendants' ex. C (doc. 48-2, p. 6).

There is also evidence that Plaintiff submitted an inmate request on July 17, 2007, to the disciplinary team asking why Plaintiff's roommate was not also charged and presenting argument about the charges. Defendants' ex. CB (doc. 48-2, p. 7). Plaintiff concluded the request by alleging that Sgt. Liadacker had him "set up." *Id.* No response is provided as to that request.

Plaintiff also submitted an appeal to the Secretary's Office that says "Warning" at the top and appeals the possession of narcotics disciplinary report. Defendants' ex. D (doc. 48-2, p. 8). The appeal is not dated or signed by Plaintiff, but Plaintiff claimed that the report was "written in retaliation for [his] having filed a grievance against Sgt. Liadacker." *Id.* Plaintiff complained that his evidence and witness statements were not considered by the disciplinary team and he sought to have the disciplinary report expunged. *Id.* This second appeal was denied on September 19, 2007, concluding that the response "received at the institutional level" appropriately addressed the concerns raised at that level. Defendants' ex. D (doc. 48-2, p. 9). Like the appeal submitted concerning the weapons charge, the response on the appeal also stated:

> Your appeal presents allegations and/or charges that have not been previously addressed at the institution. This is an appellate review process; it is not appropriate to raise new allegations, charges, and facts that the previous decision maker (Institution) has not had an opportunity to investigate and respond to.

Defendants' ex. D (doc. 48-2, p. 9). Defendants have presented evidence that Plaintiff filed only those two appeals described above. Defendants' ex. E ("Padgham affidavit) (doc. 48-2, p. 11).

In summary, Defendants' evidence shows that Plaintiff submitted two grievances shortly after being found guilty of possession of a weapon and narcotics. Those grievances were sent to the Warden. Neither grievance alleged that the charges were falsely concocted to retaliate against Plaintiff for having earlier field grievances. It was not until Plaintiff submitted a grievance appeal to the Secretary that the retaliation complaint surfaced, and the Secretary refused to consider the claim, finding that it had not been presented to the Warden.

**Plaintiff's Response, doc. 55**

Plaintiff alleges that on the day after Defendant Liadacker made the threat that he would "set up" Plaintiff, Plaintiff filed a grievance of reprisal to the Warden "by placing it in the mailbox at the center gate on his way to breakfast." Doc. 55, p. 3. Plaintiff asserts that he never received a response to that grievance. *Id.* Plaintiff "concedes" that he "did not make a direct formal accusation that the DR was false and retaliatory." *Id.*, at 10. However, Plaintiff contends that the last line of his written statement given to the disciplinary team at the disciplinary hearing was: "Both DRs were orchestrated by Sgt. Liadacker, he had me set up." *Id.* Plaintiff contends that he had wanted the statement considered by the disciplinary team and attached it to his formal grievance. *Id.* Plaintiff claims in his response that it should have been attached to Defendants' Exhibit A. *Id.* The statement referenced by Plaintiff, and provided with his response as part of his Exhibit 1, was provided by Defendants as the third page of their Exhibit C. Doc. 55, p. 19 on ECF; doc. 48-2, p. 7 on ECF. It is dated July 17, 2007, the date of the hearing. The last line is exactly as Plaintiff alleges. He asserted that Sergeant Liadacker had set him up. *Id.* Plaintiff argues that this statement put

Defendants on notice of a conspiracy and false disciplinary reports and retaliation. *Id.*, at 11.

Plaintiff also contends in his reply that prison officials were put on notice of his allegations because he called his father, who then called the warden to alert them to the problem. *Id.*, at 8-9, 11. Plaintiff claims that Defendants "Payne and Halley chose to turn a blind eye." *Id.*, at 11.

Plaintiff also asserts that he "feared making claims of conspiracy to cover up evidence of Plaintiff being framed: and naming names." *Id.*, at 11. Plaintiff asserted that employees could be fired for taking such actions and inmates making such claims could be "severely beaten - or killed." *Id.* Plaintiff reports that an inmate "has no way to escape his tormentors" when he has placed into confinement "after being framed" with a disciplinary report. *Id.* Plaintiff states that his "decision not to raise these issues was not by choice: but by force." *Id.* Plaintiff claims that just after the investigation was begun, Defendant Liadacker came to Plaintiff's cell and said, "ten times, baby, ten times." *Id.* Plaintiff did not know what that meant, *Id.*, at 7, but Plaintiff avers that the statement "began putting fear into him as to what they may have planned." *Id.*, at 12.

Plaintiff contends that he filed both his formal grievances on August 1, 2007. *Id.*, at 12. They were denied on August 14th and mailed to him on August 15th. Later that same day, Defendant Liadacker allegedly came to Plaintiff's cell and said, "Baker, I'm still waiting on that train - I'm still waiting on that train." *Id.* Again, Plaintiff states that he did not know what that meant, but "it worried" him. *Id.* The next day, August 16th, Plaintiff filed a "grievance of reprisal" to the warden, Defendant Halley, and it was "returned without action" on August 20th. Plaintiff contends he was "confused" when it

was returned with the instruction, "grievances of this nature must be submitted on a DC1-303 form." *Id.*, at 12. However, Plaintiff said he complied, rewrote his grievance of reprisal and sent it to Defendant Halley, the Warden. *Id.* Defendant Payne, for the Warden's Office, responded that the grievance was "not being accepted as a reprisal" and Plaintiff was informed that a "grievance of [that] nature" require him to file an informal grievance first. *Id.*; *see* Plaintiff's exhibit 3.

Plaintiff alleged in that "grievance of reprisal" that Sergeant Liadacker was under investigation by the FBI, along with Sergeant Magaha and Officer Anderson, and that Plaintiff's family had initiated the investigation by contacting the FBI. Plaintiff's ex. 3, attached to doc. 55. Plaintiff asserted that all three should be directed to "stay away" from Plaintiff and he claimed that Defendant Liadacker had come to his cell on two occasions attempting to intimidate him. *Id.* Plaintiff alleged that Defendant Liadacker made the two comments referenced above ("ten times" and "waiting on that train"), and Plaintiff said if he needed to he would petition the court for a restraining order to keep the three prison officials away from him. *Id.* Plaintiff said that Defendant Liadacker seemed "to be the 'ringleader.' " *Id.*

Plaintiff states that he did not receive the response returning his grievance of reprisal for approximately one week because he was "transferred to the Close Management Unit at Union Correctional Institution the same day as the grievance was responded to." Doc. 55, p. 13. Plaintiff concludes by arguing that because he "was already being retaliated against ('terrorized') for filing grievances, he should not have been mandatorally [sic] required to 'jeopardize his personal safety (life)' to fulfill the mandatory requirements of 42 U.S.C. § 1997e." *Id.*

**Analysis**

Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement of § 1997e(a) is mandatory.  Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998).  This Court does not have the discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing.  Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

A prisoner must also comply with the process set forth and established by the grievance procedures.  *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).  In other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements). Even if a grievance is initially denied as untimely, a prisoner must appeal the denial of the grievance.  *See* Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999) (noting Georgia's inmate grievance procedures allow "the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown").

If one claim is unexhausted, the Court may separate that claim out and proceed only on those claims that were exhausted. Brown v. Sikes, 212 F.3d 1205, 1206, n.1, (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons); Jones v. Bock, 549 U.S. 199, 223, 127 S.Ct. 910, 925, 166 L.Ed.2d 798 (2007) (rejecting a "total exhaustion rule" and requiring dismissal only of those unexhausted "claims," not an entire "action.").[3]

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), *relying on* Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue.").

---

[3] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1373-74, 1376. Even though evidence may be presented to support or refute a contention that a prisoner has not exhausted the grievance process, exhaustion is a "matter in abatement and not generally an adjudication on the merits," and thus should be raised as a motion to dismiss, not a motion for summary judgment. *Id.*, at 1374-75. When motions to dismiss are based on issues not enumerated under Rule 12(b), then Rule 43(c) governs "which permits courts to hear evidence outside of the record on affidavits submitted by the parties." Bryant, 530 F.3d at 1377, n.16.

Plaintiff has been given fair notice of the opportunity to develop a record to show he has exhausted available remedies. The evidence presented reveals Plaintiff did not specifically allege in his formal grievance to the Warden that the two disciplinary reports he received were false and retaliatory. Plaintiff concedes that point. Doc. 55, p. 10. Plaintiff complained only of due process violations in the investigation of the disciplinary reports and in the disciplinary hearing in his two formal grievances dated August 1, 2007. In Plaintiff's two appeals to the Secretary's Office, Plaintiff did assert that the disciplinary report "was written in retaliation for [his] having filed a grievance against Sgt. Liadacker." *See* Defendants' ex. B (doc. 48-2). This specific claim was not presented in the grievance to the Warden, and as advised in the response from the Secretary's Office, was not proper at the Secretary's level. The rules of the Department provide that a grievance appeal may be returned "without processing" when:

> The inmate is raising allegations and charges in a grievance appeal that
> have not been raised below at the previous level. (Since this is an
> appellate review process and not a fact-finding process, it is not
> appropriate to raise new allegations, charges and facts that the previous
> decision maker has not had an opportunity to investigate and respond to.)

FLA. ADMIN. CODE R. 33-103.014(1)(p). Therefore, Plaintiff's grievance appeal to the

Secretary was not in accordance with the rules of the Florida Department of Corrections

and cannot be considered to be "proper" exhaustion.

Plaintiff makes two arguments, however, that should be considered. Plaintiff

claims that he was afraid to present his allegations for fear of additional and greater

retaliation against him. His second argument is that he did present sufficient

information to prison officials through his attempted "grievance of reprisal" which was

not accepted by prison officials, presumably to continue the cover-up and prohibit

Plaintiff from exhausting administrative remedies.

Plaintiff's professed fear in presenting his allegation of reprisal is not persuasive.

If Plaintiff *were truly* in fear, Plaintiff would have requested protective custody, but he did

not. Plaintiff was aware of the procedures for filing grievances. If Plaintiff were

legitimately concerned for his safety or additional reprisals, Plaintiff would not have sent

a grievance of reprisal directly to the Warden on August 16, 2007. Plaintiff would have,

instead, properly sent a grievance of reprisal directly to the Office of the Secretary as

the rules permit. FLA. ADMIN. CODE R. 33-103.007(6). Plaintiff could, and should, have

clearly stated "the reason for not initially bringing the complaint to the attention of

institutional staff and by-passing the informal and formal grievance steps of the

institution or facility . . . ." FLA. ADMIN. CODE R. 33-103.007(6)(2). Further, in neither of

the two grievances of reprisal does Plaintiff clearly present allegations of reprisal. *See*

Plaintiff's ex. 3.  Instead, he merely alleges the two alleged threatening comments by Defendant Liadacker.  Those are insufficient to show retaliation or reprisal for the disciplinary reports.  Moreover, when Plaintiff was transferred away from the Institution, he *could* have raised his claims without fear of retribution.  Plaintiff did not.  As noted above, Plaintiff's allegations in the two grievances of reprisal that he submitted fall significantly short of putting prison officials on notice of his claims of retaliation as raised in this suit.  Therefore, Defendants' motion to dismiss should be granted as Plaintiff did not present his claims in the prison grievance process before turning to the judicial forum.

Dismissal at this point should be as to all Defendants, including Liadacker and Magaha, who have never been served with the complaint.  Plaintiff's last attempt to have those Defendants served was denied for lack of sufficient addresses.  Doc. 57. Moreover, service would be futile because the claims as to those Defendants should be dismissed for failure to exhaust administrative remedies.

Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss, doc. 48, be **GRANTED,** and Plaintiff's amended complaint, doc. 21, be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e) and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that

the order adopting this report and recommendation direct the Clerk of Court to note on

the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on August 31, 2009.


s/    William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**